IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARY H. MENDEZ,

Plaintiff,

vs.                                                    Case No. 09-1287-JTM

MICHAEL J. ASTRUE, Commissioner of Social
Security,

Defendant.


MEMORANDUM AND ORDER


Plaintiff Mary H. Mendez has applied for Social Security disability and supplemental security

income benefits.  Following a hearing conducted March 9, 2007, her application was denied by the

Administrative Law Judge (ALJ) in an opinion issued June 10, 2009. This decision was affirmed by

the Appeals Council on August 8, 2009. There are two allegations of error by Mendez. First, she

contends that the ALJ erred in discounting the opinion of Michael H. Schwartz, Ph.D. as to her

mental condition. Second, she contends that the ALJ erred in failing to consider the possible

combined effect of her impairments.

Plaintiff-claimant Mendez was born in 1961, and stated in her original application for

benefits that she became disabled beginning September 29, 2004. She subsequently amended this

to state that she became disabled by March 9, 2009. She has cited a variety of ailments, including

seizures and pain in her shoulder and ribs. At the hearing, Mendez advanced the contention that she also was impaired due to depression. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 11-18), in Mendez'z brief (Dkt. 15, at 2-4), and in the Commissioner's response (Dkt. 20, at 2-10).

The ALJ concluded that Mendez suffered from the severe impairments of degenerative disc disease of the cervical spine, seizure disorder, and depression. (Tr. 11). However, neither these individual impairments "or combination of impairments" met the standards of any listing in 20 C.F.R. § 404.1520(c) and 416.920(c). (*Id*.) With respect to her mental condition, the ALJ found:

> The claimant's mental impairment does not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

(Tr. 13).

The ALJ recounted Mendez's medical history which included neck surgery in 2005, and subsequent examination and treatment during 2007 for seizures and other impairments. This included numerous visits to a neurologist, Dr. Anwarul Siddiqui. Mendez reported to Dr. Siddiqui further complaints of neck and shoulder pain.

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in

substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Mendez first argues that the ALJ erred in referring her for a mental evaluation, conducted by Michael H. Schwartz, Ph.D., but then ignoring Schwartz's conclusions. Dr. Schwartz completed a report indicating that Mendez was generally subject to "moderate" limitations, which the report form defines as rendering some limitation "but the individual is still able to function satisfactorily." (Tr. 345). Finding that Mendez suffered from some memory impairment and depression, Schwartz found that she was "markedly" impaired in the areas of being able to carry out detailed instructions, and in making judgments based on simple work-related issues. The report form defined "marked" impairment as a "serious" or "severe[]" limitation, under which her "ability to function [is] not precluded." (*Id.*).

The ALJ concluded, as to Dr. Schwartz's evaluation:

> While Dr. Schwartz observed the claimant to be depressed there was little objective evidence warranting work restrictions. Neither Dr. Schwartz nor any other medically acceptable source described the claimant as having any mental work related limitations, other than difficulties with short term memory and difficulties with mental status questions. The claimant has not been hospitalized on a psychiatric basis. The claimant is not seeing a psychiatrist, psychologist or mental health counselor. The claimant retains the capacity to perform simple work. The memory problems noted at the consultative examination are not consistent with prior examinations.

(Tr. 16).

Mendez contends that this was error, because the ALJ was directly ignoring the report even though he had specifically requested it. (Dkt. 15, at 4). Further, Dr. Schwartz was the only person to have conducted a specific mental evaluation of the claimant. (*Id*. at 6). The absence of hospitalization was not a decisive factor, since her mental condition became clear only recently. (*Id.* at 7-8). Finally, according to Mendez, it was error to suggest that Dr. Schwartz's report conflicted with prior reports as, again, his was the only mental evaluation of the claimant. (*Id. at 8*). Mendez

notes in addition that Dr. Schwartz assigned her a Global Assessment of Functioning (GAF) score of 45, suggestive of serious symptom ology.

Here, the ALJ found that Mendez's credibility as to her description of her own condition was "questionable," but she was "given the benefit of the doubt," and imposed limitations on her ability to work. (Tr. 16). However, he explicitly found that "[t]reatment records for the past two years all reflect no memory or concentration problems and no neurological issues." (*Id.*)

The court finds no error in the ALJ's conclusions. While the ALJ did state, in announcing his decision to refer Mendez for evaluation, that such an additional mental review was "generally very helpful" in similar cases (Tr. 23), there is no indication that he intended to relinquish the ability to subsequently review that mental evaluation, and to either accept or reject it. And the ALJ was within his discretion to place Dr. Schwartz's evaluation within the context of the entire medical record.

And that medical history shows extensive medical contacts by Mendez which failed to create corroboration for the findings of Dr. Schwartz. It is true, as Mendez notes in her Reply (Dkt. 21, at 1), that Dr. Siddiqui is a neurologist rather than a mental health source, but the fact remains that Mendez had extensive medical contacts for a variety of symptoms, specifically including the impairments of seizure disorder and depression. Mendez had been given medication for her depression. While plaintiff's brief argues that her depression became worse in 2007, the only source cited for this conclusion is a suggestion by plaintiff's hearing counsel. (Dkt. 15, at 8; Tr. 23). As to her complaints of pain and seizures, Dr. Siddiqui indicated that Mendez appeared to be responding well with medication. Dr. Siddiqui specifically found that Mendez was within the normal range for

memory, concentration, speech, and comprehension. (Tr. 312, 314, 316, 318, 321, 324, 326, 328, 330, 332, 334, 337, 339, 342).

The ALJ was within his discretion in noting the absence of corroborating indications of problems in memory and concentrations in prior evaluations. Further, while the absence of prior mental treatment is a factor which should be used with caution in determining the severity of an impairment (since a person may not realize the nature of their own mental condition), see *Ott v. Chater*, 899 F.Supp. 550, 553 (D. Kan. 1995), this limitation is less strict here since the issue is not simply how Mendez herself perceived her own mental condition. Rather, since Mendez was under the care and treatment of physicians for seizure disorder and depression during the relevant time period, it was accordingly not erroneous for the ALJ to take note of the fact that none of the treating medical sources saw the need for significant intervention. The court finds that the ALJ's conclusion was consistent with substantial evidence.

Finally, the court also finds no error in the ALJ's assessment of Mendez's alleged impairments individually, or in their combined effect. As noted earlier, the ALJ specifically found that the claimant's impairments did not meet any listed impairment either singly "or [in] combination." (Tr. 12). The ALJ then proceeded to determine Mendez's ability to function, which was generally subject to moderate limitations which were "not severe enough to rule out the modest exertional demands of light work." (Tr. 14). This conclusion was rendered after a review of both Mendez's physical and mental condition, and included a discussion of her impairments as to "neck, shoulder, lower left rib cage pain and seizures" in addition to her depression (*Id.*). The ALJ specifically noted that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (*Id.*) The ALJ then found

that Mendez's "medically determinable impairments" might cause some of the described symptoms, but that were not as severe as she contended. (Tr. 16). The court finds that the ALJ did not err in failing to consider the effect of all of the claimant's impairments.

IT IS ACCORDINGLY ORDERED this 21st day of March, 2011, that the present appeal is hereby denied.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE